The next argument is in Appeal 1434 from 2007, Judkins v. HT Window. Mr. Olson, we're ready to proceed. Good morning to you. Please give us your critical contentions on Appeal. Good morning. Please, the Court, we're primarily here today because of legal errors that were committed below. In particular, the Court below analyzed the bad faith element of the threats of patent infringement under a subjective standard. As this Court has made clear most recently in the decision of GP Industries, an objective standard is to be applied. Well, isn't it really both under GP Industries? I believe it's primarily an objective standard, Your Honor, is the way I'm reading that decision. What do you think that means? That means that basically what the problem is the Court below wanted us to crawl into Mr. Judkins' head and say, well, what were you thinking and what did you believe in personally when you were doing that? And I'm saying that the proper thing is a reasonable person's situation. What would somebody in the situation with counsel involved, what would they know? What should they know? Where in Judge Lancaster's opinion does he state the law backwards? That seems to be what you're asserting. Where does he state it backwards? He criticized us in the opinion that we had not come forth with any evidence that Mr. Judkins subjectively believed. Well, here's the portion of Judge Lancaster's opinion that I think is the most difficult for you and the one that I would like you to address, and it does address the objective unreasonable. He says at A26, the status of the 120 patent is open to reasonable debate at this point. As such, we cannot conclude on this record that plaintiff was objectively unreasonable in notifying the marketplace of alleged infringement. Now, if the judge is saying that the patent is an open question as to whether this is inequitable conduct in this case, objectively speaking, why isn't that enough to satisfy the standard that's applicable here under any test? Because what we have here is a complete pattern of conduct going on, and the point is that the Illinois opinion was never cited to the examiners, and this court in the Dahmer-Chrysler case has held that a court opinion in litigation is per se material, and it was never cited. The Dahmer-Chrysler case is also interesting for another reason, because one of the things that went into an intent element in Dahmer-Chrysler's was a sham settlement of litigation, which we also have in this case. So what the court did is it basically took the Illinois case, which was an elephant in the room, and treated it as a mouse. Let me explain, if I might, in detail. What you have is there was an interference with the two Ford patents, which basically means they're the same invention. The Ford patents have earlier priority dates. They beat the dates. So therefore, they're prior art under section 102E. You look at the covers of those patents, the Ford patents at issue in this case, I'm saying, the Ford patents were not cited to the examiner. So basically, if you're going to try to eliminate those Ford patents as prior art under section 102E, you're going to have to swear behind them, which means that you're going to have to show from conception, which is almost four years prior to the filing date, to the filing date, due diligence. Now, there's an Illinois court decision saying during that stretch, abandon, suppress, or conceal. Now, it doesn't use the phrase lack of due diligence, but I don't see how you can have abandon, suppress, and conceal and still be able to show diligence. How are you connecting all of what you've just said for the last two minutes to your argument that Judge Lancaster misunderstood the law and stated the standard backwards? Because he basically said he balanced. He looked at these various things and balanced them. And I'm saying that you don't balance it. You have to bring to the attention, the examiner, that Illinois decision. It's not a matter of, well, my opinion, which was, you know, if I cross out the word proposed and sign the opinion, is equal to the Illinois opinion, and therefore it balances out. No, you have to bring it to the attention of the examiner. So what exactly is the standard that you contend is the correct standard of law that Judge Lancaster should have been applying? The correct standard is objectively what someone looking at this situation objectively would say, and this court has said litigation per se, material, must be brought to the attention of an examiner, and it wasn't here. So you're saying it's exclusively an objective test? I believe it is. Okay. And so then why is it that this controversy, if you will, which is basically what Judge Lancaster said, there's a controversy about this, why does that overcome the presumption of validity of the patent? First of all, Your Honor, I want to clear up one point. This is not a question. That's another mistake that was made by the law. The judge basically said there's a presumption of validity, therefore they've got that going for us. What we're talking about is unenforceability. A patent can be invalid but not enforceable. So you're saying he confused the two things. Exactly. That was another problem. But in answer to your question is that... There's still a burden of showing by clear and convincing evidence. Absolutely. I'm not sure where you're going with the argument about the presumption. It seems to me the presumption applies whether you're talking strictly about validity or unenforceability, right? Ultimately I do have to prove it by clear and convincing evidence. Which means that what we're looking at is the presumption that attaches to an issued patent. But for purposes of a preliminary injunction, Third Circuit, I have to show a reasonable likelihood of success. I don't have to prove my clear and convincing yet, but achieve a reasonable likelihood of success. A reasonable likelihood of success in showing clear and convincing evidence. That's correct. I think that's still in the formula. It doesn't drop out. But there were clearly things that should have been given to the examiner, including the Ford patents. The fact that there's a lack of diligence as I see it. I don't understand where you're going with this. It may be that ultimately you'll win on inequitable conduct. We don't know because none of us can really predict the future. But that's not the issue before us. The issue before us is whether you prove the likelihood of prevailing on the tort. The likelihood of prevailing on the tort is that a reasonable person, seeing what was done in this series of prosecutions, the sham settlement, the withholding of things from the examiner, would say that there is a substantial question that inequitable conduct was committed. Well, that's certainly not what Judge Lancaster made of all the evidence. Yes, Your Honor. But the point is, as I said, this court has said per se failing to bring that litigation to an examiner's intention is material. Just adopting the phrasing you just used, that a reasonable person would say that there's a substantial question. Why does that get you to a likelihood of success? In other words, sure there's a substantial question. That's why we have lawsuits. If there weren't substantial questions, we wouldn't have lawsuits at all. So why is the fact that the validity of this is open to question give you a reasonable likelihood of showing by clear and convincing evidence that it's invalid? Because I agree with Judge Bryson that clear and convincing does not drop out of the picture. I agree as well. Ultimately that's what we're going to have to do. But because of the sham settlement litigation, there's an entire pattern here of things being withheld from the examiner. And, in fact, the Illinois decision was even withheld from the district court in Pittsburgh as well. So, I mean, there's this entire pattern of conduct. I don't understand where that gets you. That just means, as we all acknowledge, that maybe you can prevail on inequitable conduct or maybe not. That doesn't establish that the statements made to your customers were unlawful. They are unlawful if they are made in bad faith. And if a reasonable person would see that these patents are unenforceable and a threat of infringement action, it therefore becomes bad faith. Your argument really depends. I think you're saying this. And tell me if this is unfair. But in saying that this is a slam dunk on inequitable conduct such that no one could take the next step in good faith of issuing infringement notification letters because no one who's with any sense at all, setting aside Judge Lancaster, could possibly think this was a reasonably debatable issue of inequitable conduct. That's your position. The phrase slam dunk is not a good one in this town. But I'm saying I have a... Or in Chicago, I might add. Yes, here. I know that too. But no, I believe here that because there is such a substantial... We're very close to, on the basis of what we've already put before the court, to raise to the level that we are entitled to a preliminary injunction. And for what it's worth, Your Honor, there was a motion for saying... Any fool would have to immediately say you're entitled to judgment as a matter of law. We do intend to file a motion for summary judgment. We're now waiting for the results of the Markman hearing, Your Honor. But if one thing I want to make clear is there was a motion for attorney's fees here. And our response pointed out something that happened after the briefing here is in the parent application, they once again went in and made amendments to create evidence, which they then took into the Markman hearing and used to convince... Well, that's not before us. If something improper happened at a Markman hearing in front of Judge Lancaster, he's going to have to deal with that. That's not part of what we have before us. My point, Your Honor, that can go to the remand because it's additional facts. Because they still have not brought to the attention... Well, we can't let you testify here as if you're a witness on the stand under oath about things that happened in the patent office or in Judge Lancaster's courtroom that are not in the record of this appeal. But it's a reason for a remand. It's not an established fact because you say it. It's not part of our record. If I may, I'd like to reserve the rest of my time. Very quickly. You have not yet filed a summary judgment of unenforceability, a motion for that? No, we've not yet taken the deposition of the plaintiff. Okay. All right, Mr. Allstadt. Good morning, Your Honors. Judge Lancaster properly denied their request for a preliminary injunction in which he said they are not entitled to a court order saying that my client cannot tell people that he has a patent and that they're infringing. This court has seen similar cases, the GP Industries case being the most recent one. And in every instance where that issue has come before this court, the court has said the patent owner is entitled to make that statement unless there's a showing of bad faith. And that's never been done. Well, his position seems to be the showing of bad faith is irrefutable and blatant on the face of undisputed facts in the record. That may or may not be correct, but that's his position. What's your response to that? Well, first off, they say two things make it bad faith. One is that the decision in the Illinois court was not before the district court. Now, this was Judge Lancaster who heard both cases. We're aware of that. The fact of the matter is the district court opinion had been presented to Judge Lancaster in a motion to dismiss earlier in the case. And that is in the record. That is, I think, at page 479. Well, if there was some sort of fraud on the court, Judge Lancaster is going to have to police that, I think, not us. But what about the patent office? What about the failure to advise the patent office of the Illinois court decision? Well, what happened, Your Honor, is Judges filed a patent application and requested an interference. The interference was pending while the district court case was in Illinois. As required by the rules of the patent office, Newell notified the Board of Patent Appeals and Interferences of the district court decision and submitted that decision. So it was before the board. And, in fact, then once the opinion of the board was vacated and the case went back to the patent examiner, he got all of those files. He was aware of that case. So it was before the patent office. They said we didn't cite the Ford patents to the patent office. Of course we did. There was an interference declared with the Ford patents. So the fact of the matter is the patent office was aware of the case and so was the district court. The second thing they say is, well, it was a sham settlement with Newell. What happened was we had appealed the decision or filed a civil action seeking to vacate the decision to the board. And the board had ruled that, or had found, Judkins was the first to invent. But he was not entitled to a patent because he had suppressed and concealed. On appeal, or in the district court decision, we asked that that decision be vacated. Now what's interesting is when the court, when the case went back to the board and they issued the opinion that's in the record, they said the issue before the district court was whether there had been suppression or concealment. So that was before the court. The second thing is, at the time of the interference, there were some changes in the law. And one of the issues that had always been in suppression and concealment, was whether anything other than working on getting a patent application on file or testing the invention was sufficient to overcome this presumption of suppression and concealment. And the earlier cases said no. But there were some more recent cases which said yes. And the thinking was, if you're going to look at the theory of the patent system to get the invention to the public, there's two ways you can do it. File a patent application, which is ultimately published, or put it out in the marketplace. So if the inventor is making an active effort to get the product in the marketplace, then that's evidence that he's not suppressing or concealing the invention. So that went up. Now what happened in the settlement was we had prepared a motion for summary judgment which had a list of proposed findings, declaration, and evidence. And we sent it to Newell and said, look at this. And look at the case law. And you tell us if you can agree to this. Is what you're talking about now in the record? Oh, sure it is. Okay. I mean, in other words, the discussions between you and Newell that led to the settlement. Well, the settlement agreement is in there. You're now telling us about the whole history that's behind the curtain, if you will, on the settlement agreement. Is this in the record somewhere? Well, it's not in the record on appeal apart from the settlement. Then why should we be thinking about what you sent to Newell and what you told them about and so on? Because if you look at the settlement agreement itself, you can draw that inference. But you're not telling us to draw an inference from the settlement agreement. You're talking about what happened. You sent this to them and they considered this. I have a hard time seeing why we should even be listening to that. But the point is they're making the contention that it was a sham settlement. And we're saying, no, it wasn't. They're making a contention based on the record. I mean, whether you agree with it or disagree with it, they're making a contention based on the record that's before us that it's a sham settlement. You're now basically saying, well, there's all this other evidence out there that shows that it wasn't. Well, even what's on the record is the settlement agreement itself. Well, why don't you just talk about what's on the record rather than what's behind the curtain? Well, if you look at the settlement agreement, you'll see that it said two things. Judkins is going to file this summary judgment motion. And the summary judgment motion has attached to it a number of exhibits, which establish what Judkins did. The second thing it says is Newell's going to file a statement which says they don't dispute the statements. They're not going to oppose the motion. So the settlement agreement itself said Newell had that in front of him. And they could have. But they didn't object it to anything that was in there. The second thing they say is, getting back to this district court opinion, that it should have been disclosed. Well, what the district court decision involved was a dispute between Springs and Newell. Judkins was not a part of that case. Springs said Newell's court patent is invalid because Judkins is a prior inventor. If you read the Newell decision, what the district court said there was, there is evidence of record of a delay between Judkins' conception, reduction of practice, and filing the patent. And I think we know that you guys weren't a party in that case that was out in Rockford or wherever it was. I think Mr. Olson's point is that you were involved, so to speak. In other words, Mr. Judkins testified. And I think maybe he said even you testified in that case. So you knew about it. And since you knew about it, you should have disclosed it to the patent. Well, it was disclosed to the patent. But the point was, it wasn't material in any event because the decision of the district court was, there was a presumption of a suppressed debate that had not been overcome by Springs. In the district court... So it wasn't material because it didn't directly involve anything that you hadn't proven or he had proven. Right. And we had no opportunity. The fact that Judkins testified doesn't mean he could say anything he wanted to or put in any evidence. He had no control over that case. So we're saying that it is a situation where it was a material and it was disproved. The district court had in front of it and so did the patent office. So there was no bad faith in either of those situations. But coming back to what the question is, is should this court reverse Judge Lancaster's decision not to enter a preliminary injunction against my client telling people he's got a patent and maybe they'd be infringed. And he found that three of the elements required to get a preliminary injunction were in my client's favor. Not only that they hadn't shown a reasonable likelihood of success, but also that they had admitted that there was, that their damage was lost sales. And they argued about, well, there's some reputation involved because we can't sell it. But like Judges, that's lost sales. And finally, they said the balance of harm tips in favor of Judges. You were quite aware what the findings were. They're laid out in the opinion. We've got the opinion. But my point, Your Honor, is that on three of the four decision points, they lost. And on the third one about the balance of the harm, that's something that's an even higher standard than clearly erroneous. This court doesn't substitute its judgment on that point. There's an issue here, I gather, over whether Third Circuit law applies on the factors or whether it's Federal Circuit law. But let me just ask you a question about Third Circuit law. Is the Third Circuit a circuit where you have to meet all four factors to get the injunction? Some circuits, for example, the seventh where I am, is it's a balancing test and you have to meet some but not all of them. Well, you have to show likelihood of success. And it's certainly a law that if you don't meet one of them, then you don't get your injunction. So in other words, in the Third Circuit, you have to show all of the factors. That's right. Okay, all right, that was my question. That's right. But, you know, whatever the standard is, here it's a situation where they didn't show three out of four and this court should affirm. I'd like to briefly address our motion for sanctions because it's our contention that no reasonable attorney would have brought this appeal looking at the law the way it was and the decision. This court has never approved an injunction wherein the court told a patent owner that he could not tell someone that he had a patent and they might be infringing. This just shouldn't be before this court. And I think I would ask the court to take the opportunity to tell the bar when you've got back situations like this, you shouldn't be here. Move on with the case. All right, thank you. Mr. Olson, you have about three and a half minutes, four minutes. The question was why wasn't the only opinion brought to the attention of the patent examiner. I want to make that clear. It's the attention of the patent examiner. That's what the MP requires. That's what this court has required. Now, I've been a patent attorney for over 25 years and I think geography is important here. Patent examiners were down at Crystal Plaza 3 and 4. The Board of Interference is where this file would have been. It's almost a mile north of there. So just because it was brought to the patent office does not mean it's brought to the patent examiner. Because when the patent examiner saw this, he would have gone, wait a minute, there's these four patents and they predate, so therefore they're prior to Article 103, and there's been suppressed and concealed, so therefore the burden would have shifted to them to try to get out of that. An examiner would have made that rejection and these patents would have never issued. But one of the things I think is important to go into is the fact that that wasn't brought to the attention of the examiner, but what's really important is the question is where you get into the duty in the litigation before. And as this court has said in both Ferrant and Paragon, when we have made a prima facie showing the materiality, I think we've shown high materiality, the burden now shifts to them to explain innocence or exculpatory information, why there wasn't intent, or to use a phrase, to show what's behind the curtain. And we had argument today as to reasons and explanations as to what was in that litigation. None of that's in the record. There was absolutely no explanation below that this was not bad faith, that this was not an intent to withhold this information from the examiner. I guess my question is why was the Northern District of Illinois decision all that significant, given, as Mr. Allstadt says, that they weren't a party, they didn't have any control over it, and it ended up not being all that material even to the ultimate decision in that case? Because the manual patent offing procedure says you should bring to the attention any litigation involving the subject matter of this material. There are other cases in this court that have talked about the subject matter of it. It's not that it's that patent being litigated. It's the subject matter. So it doesn't depend on whether you were a participant. It could be a related patent. It could be a parent patent. It could be a sister patent. It could be things involving the same judge, Reiser, has one out of the Northern District of California about a year ago. It could be a separate one. And so the point is this— But it doesn't make non—even assuming that the MPEP requires that strictly, noncompliance with that provision of the MPE can't possibly result in inequitable conduct finding as a matter of law in every case, do you think? I mean, suppose it's a grandparent patent that has only the most minimal connection to the grandchild. You're not suggesting that that requires a finding as a matter of law of inequitable conduct regardless of the circumstances? Maybe you are. I'll ask. Are you? In the extreme, there would be—as always, there's always the extreme case of no. But here, where the particular question and the subject matter of that question, whether it was abandoned, suppressed, or concealed, in other words, a lack of diligence, which is a factor here because we have that 102E problem, that should have been brought to the court. And that's why it's so—it's highly material. But I think the point of Judge Bryson's question is that the fact that there's this rule out there that says that you've got to bring anything involving the subject matter to the examiner's attention doesn't really relieve you from the burden of proving in an inequitable conduct issue that it was actually important in the material and something that ought to have been considered. I do. Yes, I do. Because I have—first of all, Dahmer, current crisis says it's a per se violation, number one. And then so does Olli Nielsen. Olli Nielsen says, you know, an examiner—the Olli Nielsen decision a couple of months ago says— examiners definitely want to know about litigation. Why? So they can then ask the question. So let's not get hung up on whether the yes or no decision has been made. You give it to the examiner and you let him ask the question. All right. I think we have your argument clearly in line. We thank both counsel. The case is submitted.